**W. L. MOORE, Jr. and G. W. Maguire,
Appellants,**

v.

**RICHARDSON SAVINGS AND LOAN
ASSOCIATION, Appellee.**

**No. 18188.**

Court of Civil Appeals of Texas,
Dallas.

July 26, 1973.

Charles E. Tobin, Dallas, for appellants.

Byron L. Falk, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Alleging that they had been charged usurious rates of interest by Richardson Savings and Loan Association, W. L. Moore, Jr. and G. W. Maguire brought this action to recover the penalties allowed by Tex. Rev.Civ.Stat.Ann. art. 5069–1.06.* Richardson Savings and Loan Association (hereinafter called the Association) answered by admitting that the notes executed by Moore and Maguire revealed an excessive rate of interest but that such was caused and brought about by accident and bona fide error without intent on the part of the lending institution to charge interest in excess of the legal limits as provided by Article 5069–5.01. The Association also brought a counterclaim in which it sought judgment for the remaining balances of the two promissory notes in question together with interest and attorneys' fees.

The case was tried before the court and a jury. In response to special issues the jury found that the charges made by the

---

* Unless otherwise indicated all references to statutes are Vernon's Tex.Rev.Civ.Stat.Ann.

Association to finance the loans in question resulted from an accident and bona fide error. Judgment was rendered denying Moore and Maguire any recovery and awarding the Association a judgment against Moore and Maguire for the unpaid balance of the notes, together with interest and attorneys' fees.

Moore and Maguire seek reversal of this judgment based upon two points of error. In their first point they contend that reversible error resulted when the trial court incorrectly admitted into evidence a certain inter-office communication which was offered by appellee Association as a part of its business records.

The two promissory notes executed by W. L. Moore, Jr. and G. W. Maguire, as makers, payable to Richardson Savings and Loan Association were offered into evidence. These notes, dated December 22, 1970, disclosed that the makers each agreed to pay the lender the sum of $6,050, payable in twelve monthly installments, eleven being in the sum of $168.05 each and the last in the amount of $4,201.45. In each note under what is designated as "Disclosure Column" the sum of $5,000 is designated as the amount of credit with no prepaid finance charge so that the total amount financed is definitely shown to be $5,000. The sum of $1,050 is set forth as the "finance charge" and "interest" and the "annual percentage rate" is shown to be 12.82 per cent, resulting in "total of payments" to be $6,050.

Both Moore and Maguire admitted that when they executed the notes they did not read the same carefully so as to determine the amount of interest charged. They admitted that they paid several monthly installments on the notes before discovering that the interest rate and amount set forth on the face of the notes were obviously excessive. At that time they stated that they contacted the officials of the Association concerning the matter but no action was taken by appellee Association until the suit was filed. Mr. Moore testified that there

was an apparent conflict on the face of the notes concerning interest charged and concluded that they were "poorly drawn." When asked whether he thought the savings institution intentionally charged usurious interest he replied "I did not at first," but then he said "I do now, yes."

James David Sykora testified for the appellee. At the time of the trial he was vice-president of the Association in charge of the installment loan department and had been employed since May 3, 1971. He was not with the Association at the time of the execution of the two notes in question. He qualified as an expert in dealing with installment loans and the matter of computing interest. He testified that he had examined the two notes in question and that the two provisions in the notes relating to interest rate and amount of interest charged are conflicting. He said the statutory maximum interest that can be charged by savings and loan associations on installment loans in Texas was 8 per cent "add on" which equals the stated annual percentage rate of 14.5 per cent. He testified that the sum of $1,050 shown on the notes as "finance charge" does not equal 12.82 per cent interest rate repayable in one year. Had the notes been payable in three years then the $1,050 would have been the correct interest charged.

According to Mr. Sykora Mr. Maguire came to see him in May, 1971 and discussed the matter of interest rates charged on the notes. He advised Mr. Maguire that he would check on the matter. Mr. Sykora reviewed the files on the notes and had a conference with Mr. Gregory, the president of the Association. Thereafter he wrote Mr. Gregory an inter-office communication which was offered as "Defendant's Exhibit 1" and which reads as follows:

"TO: Mr. Gregory          Date: 5–21–71

FROM: Jim Sykora
SUBJECT: Loan Files—1972 Moore
—1973 Maguire

COMMUNICATION: Here are the two files we discussed on the phone. The contracts as set up are in error. The most simple solution would be to amend the contract by letter to read 36 payments at 168.05 each. Thus the interest would remain unchanged. The *maximum interest due as set up on the present payment schedule would be 557.21.*

/s/ Jim

RESPONSE: Linda Put in File."

■ Appellants, in their brief, admit that the exhibit which they attack was "qualified as a part of the business records of the Defendant [appellee]." The record also reveals that there was no objection to the authenticity of the memorandum as a part of defendant's (appellee's) business records. Appellants say that the instrument was erroneously admitted into evidence as a part of appellee's business records because Mr. Sykora did not have personal knowledge of the facts contained in the instrument. It is appellants' argument that the statement contained in the memorandum to the effect that "[T]he contracts as set up are in error," amounts to a statement of fact concerning the original execution of the notes and therefore could not be based upon the personal knowledge of Mr. Sykora who was not an employee of the Association at that time.

We cannot agree with appellant's contention that reversible error is demonstrated. It must be borne in mind that Mr. Sykora, while admittedly not an employee of the Association at the time of the execution of the notes, did qualify himself as an expert in installment loan matters. The sentence in the instrument which is challenged by appellants, to-wit, "The contracts as set up are in error," does nothing more than express that which is obvious on the face of the instrument. Such expression does not relate back or constitute an effort on the part of Sykora to testify to what was in the mind of the person who actually drafted the instruments. Sykora had personal knowledge of that which was before him, the plain provisions of the notes themselves, when he prepared the memorandum which is conceded to be a proper business record of the Association. The obvious and logical explanation of what Sykora said in the memorandum was that having examined the notes in question in the light of his experience as an expert in such matters the "contracts as set up are in error." The Supreme Court in Loper v. Andrews, 404 S.W.2d 300 (1966), discussed the identical question and stated that although a witness is generally permitted to testify only to facts within his personal knowledge, a well defined exception to this rule is represented by the testimony of a qualified expert in the expression of an opinion in the field of his qualifications. "This is permitted because experts are considered to have a special knowledge not generally possessed by jurors and are better able to draw conclusions from the facts than the jurors." To the same effect see Coastal States Gas Producing Co. v. Locker, 436 S.W.2d 592 (Tex.Civ.App.—Houston [14th Dist.] 1968).

It is obvious on the face of these notes that even experts could not disagree that there was an error in the expression of the annual percentage rate of 12.82 per cent when applied to a $5,000 loan repayable in one year. Such would not result in an annual interest charge of $1,050 as shown on the notes. Moreover, Sykora, the person who prepared the questioned exhibit was on the witness stand in person and subject to cross-examination by appellants. He was extensively cross-examined so that any possible harm flowing from the admission of the memorandum was completely eliminated. We find no merit in appellants' first point of error and overrule the same.

■ In their second point of error appellants contend that there was a fatal and irreconcilable conflict between the jury's answers to Special Issues Nos. 1 and 2 and the answers to Issues 3 and 4. In response to Issues 1 and 2 the jury found that the charges by appellee Association to finance

the loans to Moore and Maguire resulted from an accidental and bona fide error. Special Issues 3 and 4 inquired as to whether Moore's and Maguire's agreement for the loans from the Association included an option for two successive annual renewals. To these issues the jury answered "No."

Appellants argue that by applying the test announced by the Supreme Court in Little Rock Furniture Manufacturing Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (1949), when the jury's answers to Special Issues 1 and 2 are considered separately appellee would be entitled to a judgment whereas when the jury's answers to Special Issues 3 and 4 are considered separately appellants would be entitled to a judgment. We cannot agree.

It must be observed that the primary question presented in this case is one raised by appellee's pleadings and evidence to the effect that the lending institution did not intend to charge a usurious rate of interest so that the expression contained in the notes themselves relating to interest charges was the result of an accident or a bona fide error. This defense is made available by Article 5069–8.01. Special Issues 3 and 4, as submitted by the court, really amount to no more than the submission of evidentiary elements of appellee's asserted defense to appellants' basic cause of action founded on usury. Appellants did not plead or stand upon the questions submitted in Special Issues 3 and 4 as a basis for recovery so it cannot be reasonably said that if Special Issues 1 and 2 are disregarded that appellants would be justified in demanding a judgment based upon the jury's answers to Special Issues 3 and 4. Thus the test of *Little Rock Furniture Manufacturing Co.*, supra, is not met. We hold that there is no conflict in the jury's answers and overrule appellants' point 2.

The judgment of the trial court is affirmed.